Little v. Mundell—59 Ind. App. 227.

---

## LITTLE ET AL. *v.* MUNDELL ET AL.

[No. 8,632.   Filed June 16, 1915.]

1. ATTACHMENT.— *Liens.— Priority.— Rights of Creditors Filing Under.*—The lien on property attached relates back to the time the writ of attachment was placed in the hands of the sheriff, and the claims of all attaching creditors, including those who have properly filed under, are liens from the time the original writ was placed in the hands of such officer, and take priority over subsequent judgments and mortgages, and this is so even though the underfiled claims were not in fact filed until after such mortgage was executed or judgment rendered.   p. 232.

2. ATTACHMENT.—*Filing Under.—Rights Acquired.*—Creditors may file under an original attachment proceeding as long as the same remains pending, and such underfiling claimants acquire the same lien and become entitled to all the rights of the original·plaintiff. p. 233.

3. ATTACHMENT.—*Filing Under.—Effect.—Dismissal of Original Action.*—While the claim or complaint of each underfiling creditor is in a sense an independent action, it keeps alive the original writ of attachment and the levy made thereunder, even though there is a dismissal by the first attaching creditor.  p. 233.

4. ATTACHMENT.—*Filing Under.—Dismissal of Original Action.— Conveyance by Debtor.—Subsequent Sale to Satisfy Attachment*

*Lien.—Rights of Debtor's Wife.*—Although the wife of a debtor whose real estate has been levied on under a writ of attachment is entitled to one-third of such real estate as against the purchaser at a sale to satisfy the lien, where a debtor and his wife conveyed his real estate after the original writ of attachment had been levied thereon, and after a number of creditors had filed under in the original action, and then procured a dismissal of the original action, the liens of the creditors filing under had attached and were not affected by such dismissal, and the act of the wife in joining her husband in such conveyance was a waiver of her right to assert a one-third interest in the land as against the purchasers at a sale subsequently had to satisfy the liens of the creditors filing under. pp. 233, 235, 236.

5. APPEAL.—*Review.—Findings.—Conclusiveness.*—For the purpose of determining the question raised by the exceptions to conclusions of law the finding of facts must be accepted as correct, hence the contention by appellant who was the wife of defendant in an attachment proceeding, that a conveyance of the land in which she joined, and which was made after the lien had attached but before sale, was a nullity and the result of mutual mistake, etc., can not prevail where the findings do not support the contention that the deed was void and do not show any rescission or cancellation, but rather that there was a ratification thereof. p. 234.

6. HUSBAND AND WIFE.—*Conveyances.—Inchoate Interest of Wife.*—A wife, by joining her husband in a valid and effective deed extinguishes her inchoate interest in the land conveyed. p. 236.

From Hamilton Circuit Court; *Dan Waugh,* Special Judge.

Action by Vern T. Mundell against John Mundell and others to foreclose a mortgage, in which John H. Little and Hannah E. Little, his wife, and certain attachment creditors of John H. Little filed cross-complaints asserting title in themselves respectively to the land involved. From the judgment rendered, Hannah E. Little and others appeal. *Affirmed.*

Joseph A. Roberts and *Shirts & Fertig,* for appellants.
*Kane & Kane,* for appellees.

HOTTEL, J.—The facts controlling the questions presented by this appeal, as found by the trial court, are in substance

as follows: On June 13, 1907, John H. Little was the owner in fee of a 40-acre tract and a 7-acre tract of real estate in Hamilton County, Indiana. On that day he and his wife, Hannah E. Little, one of the appellants, joined in the execution of a mortgage on said real estate to the Wainwright Trust Company to secure a note of $1,500, and interest notes, all executed by John H. Little. This mortgage was recorded, and on August 12, 1910, was assigned of record to appellee, Vern T. Mundell. John H. Little moved out of the State of Indiana, and on September 21, 1908, Zola Walker and others filed suit against him in the Hamilton Circuit Court on a note executed by him, and in connection with such suit a writ of attachment was caused to be issued against his property. This writ was levied on said 40-acre tract of real estate on September 23, 1908, and the proper *lis pendens* notice filed and due return of the levy made by the sheriff and recorded with the clerk, all on the same day. On April 14, 1909, the Peoples State Bank of Indianapolis filed under in the suit of Zola Walker. On August 13, 1909, John H. Little and his wife, Hannah E. Little joining, conveyed by warranty deed said entire forty-seven acres to John Mundell, the brother of Vern T. Mundell for the sum of $4,230, which sum was paid on the same day as follows: $1,600 by check to John H. Little, $257 to Zola Walker, *et al.*, in discharge of their original claim on which the writ of attachment issued, $124.05 to the mother of John Mundell on a debt owed to her by said Little, $2 attorney fees for said Little, and $50.45 accrued interest on said mortgage, $1,500 by assuming payment of the mortgage, the remainder being covered by a note given by John Mundell to Little. On the same day this deed was made Zola Walker, and the other plaintiffs to the original attachment proceeding, dismissed their complaint. On August 28, 1909, the Knight & Jillson Company filed under in said cause No. 14,884, its complaint on note against John H. Little, which complaint was accompanied with approved

bond and affidavit for attachment. On March 15, 1910, the Peoples State Bank of Indianapolis and the Knight & Jillson Company amended their underfiled complaints in cause No. 14,884, making John Mundell a defendant thereto and alleging therein that the conveyance to him from the Littles was fraudulent and asking that the attachment lien be adjudged prior to any rights acquired by said Mundell under his deed. Service of summons was had on Mundell and he appeared and answered such complaint. On April 25, 1910, cause No. 14,884 was tried by the court and the court found and adjudged that there was due from Little to the bank, $4,568.16 and to the Knight & Jillson Company, $9,136.32, without relief, etc., and adjudged that the attachment proceedings of such underfiling plaintiffs be sustained and decreed the sale of the said 40-acre tract of real estate as lands are sold on execution and adjudged that the proceeds of such sale be applied to the discharge of said sums found due said underfiling plaintiffs, but refused to adjudge that the deed to Mundell to said real estate be set aside and declared void.

The appellant Hannah E. Little was not a party to suit No. 14,884, nor to either of the complaints underfiled therein.

On May 21, 1910, an execution was issued to the sheriff for the sale of the forty acres under the attachment decree. The sale was duly advertised and the real estate sold to the bank and the Knight & Jillson Company for $3,500. On July 22, 1911, the year having expired and there being no redemption the sheriff executed a deed to such purchasers for said 40-acre tract, which is all the security they have for their claims against John H. Little, he being insolvent.

On September 9, 1910, Vern T. Mundell, without any consideration, and for the purpose of assisting his brother, John, in getting as much as possible out of the forty acres covered by his (Vern's) mortgage, executed a release of the lien of the 7-acre tract covered by such mortgage, and

on September 28, he began this action to foreclose his mortgage on the forty acres.

At the time of the execution of the deed from the Littles to John Mundell, neither Little nor Mundell had any actual knowledge that the claim of the bank had been filed under in cause No. 14,884, but the same had in fact been so filed with affidavit in attachment and bond as aforesaid in open court, and the sheriff's notice of levy of attachment appeared of record in the clerk's office as provided by law.

On September —, 1909, said John Mundell, having learned of the attachment liens on the forty acres, went to the state of Mississippi, met said John H. Little, and made demand on him for the return of the purchase money; that Little returned to Mundell $1,300 in cash, and in October, 1910, surrendered the purchase money note, which cash and, note were to be held by Mundell until said litigation was disposed of and the title to said real estate made good in Mundell; that Little had paid out $300 of the cash payment on his individual debts and did not agree to pay Mundell the amount of the note which he, Mundell, had paid to his mother, as part of the purchase price, nor did he repay to Mundell said $300, nor said $257 paid to Walker, *et al.*, nor did he agree to protect Mundell against his assumption of said mortgage, nor did Mundell then agree to reconvey said lands to John H. Little, but was to retain the possession and title to all of said real estate; that at the time the 7-acre tract was released from the mortgage and at the time of the finding it was worth $1,200; that the forty acres at the time of the sheriff's sale was worth $3,600 and at date of the finding not more than $4,000; that there was due on the note sued on for principal, interest and attorney fees $1,812.27, and that there should be credited thereon $1,200, the value of the seven acres so released; that Mundell never returned to Little the $1,300 repaid by him; that Mundell destroyed the said purchase-money note, sur-

rendered to him by said Little, and on June 24, 1911, exe-
cuted to said John H. Little a quitclaim deed for said
40-acre tract which has not been recorded; that he still
holds the seven acres claiming title in fee under said deed
to him from Little and wife; and that the undivided two-
thirds of said 40-acre tract largely exceeds in value the
amount due on plaintiff's mortgage, including interest and
costs.

On the above finding the court stated its conclusions of
law as follows: "(1) That Vern T. Mundell is entitled to
personal judgment against John Mundell for $1,812.27, and
that as to Peoples State Bank and Knight & Jillson Com-
pany they are entitled to have credit thereon for $1,200.
(2) That for the balance, to wit, $612.27, Vern T. Mundell
is entitled to foreclosure on the forty acres and to have
same sold for the payment thereof. (3) That Hannah E.
Little take nothing by her cross-complaint. (4) That
Hannah E. and John H. Little have no interest in the forty
acres. (5) That Knight & Jillson Company and the Peoples
State Bank of Indianapolis are the owners in fee of the
forty acres, subject to plaintiff's right to foreclosure for
$612.27."

Appellant Hannah E. Little, alone, assigns error, and
therein separately challenges the correctness of the third,
fourth and fifth conclusions of law, respectively.

One and the same question is presented by these separate
assigned errors, viz., Under the facts found by the court, is
Hannah E. Little entitled to one-third of the 40-acre tract
of real estate in controversy, or, in other words, did the
sale of said real estate under the attachment proceedings
against John H. Little vest in his wife Hannah E. Little a
one-third of such real estate?

As affecting this question the following propositions of
law are pertinent and applicable. The lien on prop-
1. erty attached relates back to the time the writ of at-
tachment was placed in the hands of the sheriff, and

the claims of all the attaching creditors, including those who have properly filed under, are liens from the time the original writ was placed in the hands of such officer, and take priority over judgments rendered or mortgages executed afterwards, and this is so even though the under-filed claims were not in fact filed until after such mortgage was executed or judgment rendered. §§956, 978 Burns 1914, §§922, 943 R. S. 1881; *Shirk* v. *Wilson* (1859), 13 Ind. 129; *Ryan* v. *Burkam* (1873), 42 Ind. 507; *Fee* v. *Moore* (1881), 74 Ind. 319; *Taylor* v. *Elliott* (1875), 51 Ind. 375. Creditors may file under the original at-

2. tachment proceeding as long as the same remains pending, and such underfiling claimants acquire the same lien and become entitled to all the rights of the original plaintiff. See cases cited, *supra.* The claim or complaint of each underfiling creditor, though, in

3. a sense, an independent action, keeps alive the original writ of attachment and the levy made there-under, and this is so even though there be a dismissal by the first attaching creditor. *Henderson* v. *Bliss* (1856), 8 Ind. 100; *Lexington, etc., R. Co.* v. *Ford Plate Glass Co.* (1882), 84 Ind. 516; *McLain* v. *Draper* (1887), 109 Ind. 556, 8 N. E. 910.

It follows from the propositions above announced that the lien of the bank and the Knight & Jillson Company on the real estate in question attached while the legal

4. title thereto still remained in John H. Little, and before he and his wife joined in the deed to John Mundell. The attachment was against the property of John H. Little and the real estate was sold to pay his debts. The lien was against the whole of the 40-acre tract and if the sale to satisfy such lien had been made while the legal title remained in John H. Little his wife unquestionably would have been entitled to one-third of such real estate as against a purchaser at such sale, or any one claiming through such purchaser.

The question therefore which we must determine, is: Did the appellant Hannah E. Little by joining her husband in conveying such real estate, after the lien of the bank and the Knight & Jillson Company had attached thereto, thereby waive or deprive herself of her right to assert her one-third interest in such real estate? It is very earnestly contended by appellant, in effect, that such deed was a nullity; that it was the result of the mutual mistake and misunderstanding of both grantors and grantee, and that as soon as they became aware of the facts they rescinded and cancelled such deed; that the title to such real estate never passed to said Mundell but in fact always was in Little, and that the real estate was so sold, and hence, that the wife's interest can not be affected by such deed. This contention of appellant is not supported by the finding of facts, and for the purposes of the question under consideration, the finding of facts must be accepted as correct. *Kline* v. *Dowling* (1911), 176 Ind. 521, 96 N. E. 579; *Myers* v. *Reynolds* (1911), 47 Ind. App. 233, 94 N. E. 345; *Timmonds* v. *Taylor* (1911), 48 Ind. App. 531, 96 N. E. 331. Under the findings there can be no doubt as to the validity of the sale to Mundell by Little, and hence no question as to the validity of the deed made thereunder.

To us, it seems equally certain from the finding of facts that there was no rescission or cancellation of this deed on account of any mutual mistake of the grantors and grantee; but on the contrary, after both parties were in possession of all the facts there was a ratification of such sale and deed to the extent that Mundell was permitted to retain the title conveyed by such deeds pending the litigation affecting such title, Little turning back to him his note and part of the purchase money which Mundell was to hold *"until such litigation was disposed of and the title made good in Mundell"*. (Our italics.) John Mundell still retains the 7-acre tract so deeded to him, and his brother, before beginning this foreclosure proceeding, released the

lien of his mortgage on such tract. The findings also show that in the attachment proceeding, John Mundell was made a defendant to the complaints of the bank and the Knight & Jillson Company and the court in that case refused to set aside the deed from Little to said Mundell, but simply declared that the liens of the bank and Knight & Jillson Company had priority over Mundell's conveyance.

It is, however, further insisted by appellant that the land was levied on as Little's land and sold and conveyed as his land; that the legal title thereto had in fact 4. been restored to Little when the bank and Knight & Jillson Company received their deed, and hence that they must of necessity claim title through Little, and are, for this reason, estopped from denying the title of Little's wife to the one-third which the statute gives her in his lands in such cases. As supporting this contention appellant cites cases brought by creditors to set aside a fraudulent conveyance, joined in by the wife. In such cases the courts have held that the wife is entitled to her third in the real estate so conveyed as against her husband's creditors on the theory that if such deed must fail and be held invalid as between the husband and such creditors that the same deed must likewise remain invalid and ineffective as against the wife. This conclusion necessarily follows. Such cases, however, are easily distinguishable from the instant case. In those cases a deed by which the wife extinguished her right made before the creditor's lien attached was held invalid and hence her right was restored. The deed which extinguished her right being destroyed could not stand in the way of her asserting her right, while in the instant case she, after the creditors' lien attaches to all of her husband's land, and, while she has the inchoate right therein which the statute gives her, voluntarily surrenders and conveys such right by joining her husband in a deed to such real estate, valid for all purposes both as to her husband and herself. There can be no doubt but

that a wife, by joining her husband in a valid and effective deed, may extinguish her inchoate interest in his land. *Hudson* v. *Evans* (1882), 81 Ind. 596; *Sharts* v. *Holloway* (1898), 150 Ind. 403, 50 N. E. 386.

Appellants insist in effect that appellees are forced to the absurd position of claiming that they obtained the two-thirds of the land in question because John H. Little was the owner of the land when the lien attached, and that they get the one-third of the same land because he did not own the land but had sold it to another. The answer to this contention is that the lien of the bank and Knight & Jillson Company attached while the legal title to the real estate was in John H. Little. After the lien attached, and before the sale, appellant Hannah E. Little by her voluntary deed surrendered and extinguished the possible or inchoate interest which she then had in such land, and which but for such deed she might have effectually asserted. While the title to the real estate in question was in her husband at the time appellees' lien attached, it was not in him at the time of the sale of such real estate, It follows, we think, that the case is controlled by the cases of *Hudson* v. *Evans, supra,* and *Sharts* v. *Holloway, supra,* and under the rule announced in those cases, she, by joining her husband in his deed to such real estate, waived, "or barred the possibility" of her inchoate right becoming a vested right upon the judicial sale of such real estate. The judgment is therefore affirmed.

NOTE.—Reported in 109 N. E. 227. As to vendor's right upon rescission, see 12 Am. Dec. 312. As to wife's right to dower in lands sold under execution against husband, see 18 L. R. A. 78. As to attachment lien not perfected by judgment during husband's lifetime as prior to widow's share in estate, see Ann. Cas. 1913 A 343. See, also, under (1) 4 Cyc. 623; (2) 4 Cyc. 644; (3) 4 Cyc. 809; (4) 14 Cyc. 957, 928; (5) 38 Cyc. 1990; (6) 14 Cyc. 953.