393 P.2d 791

**Doyle L. ALLRED, Administrator of the Estate of James F. Allred, deceased, Plaintiff and Appellant,**

v.

**Vonal ALLRED and Agnes Allred, husband and wife, Defendants and Respondents, Isabell Allred, Plaintiff in Intervention and Respondent.**

No. 9980.

Supreme Court of Utah.

July 7, 1964.

Frandsen & Keller, Price, Nielsen, Conder & Hansen, Salt Lake City, for plaintiff and appellant.

Lee W. Hobbs, Salt Lake City, A. John Ruggeri, Price, for respondent.

WADE, Justice.

This appeal is by Doyle L. Allred as administrator of the Estate of James F. Allred, deceased, from an adverse judgment in an action originally commenced by some of the children of James F. Allred, deceased, for cancellation and rescission of certain conveyances made to Vonal and Agnes Allred by an escrow holder upon the order of Isabell Allred, a plaintiff in intervention.

During the lifetime of James F. Allred in May, 1958, he and his wife Isabell Allred, the plaintiff in intervention in this case, entered into a contract to sell certain real and personal property to their son Vonal Allred and his wife Agnes. Part

of the real property belonged solely to James F. Allred, part solely to his wife Isabell Allred, and some was held in joint tenancy. All the personal property which was sold belonged to James F. Allred. The total purchase price of the sales agreement was $17,000 and under its terms Vonal and his wife obligated themselves to pay $1,000 on December 1, 1959, and to pay installments of $1,000 on December 1st of each year thereafter. The payment due on December 1, 1959, was paid, the one due on December 1, 1960, was not paid. James F. Allred died on February 25, 1961, shortly after the second installment became due. The sales agreement provided that the vendors would place in escrow necessary documents transferring the real and personal property described therein. Four days after the execution of the sales agreement the vendors delivered to an escrow agent certain warranty deeds, bills of sale and other instruments with a letter of instructions wherein the escrow agent was advised that upon payment by the purchasers of the total amount of $17,000 to the vendors or "the survivor of us" he was to deliver to the purchasers the papers and documents left with him. The escrow agent was further instructed that if both the vendors should die before all payments had been made under the provision of the sales agreement that the payments which were to become due should be abated and the documents and all papers should be delivered to the purchasers as if full payment had been made.

After James F. Allred died intestate, Isabell Allred instructed the escrow agent to deliver the deeds and other papers to the purchasers. Isabell ordered delivery of the documents to her son and daughter-in-law on their oral promises to take care of and provide for her for the remainder of her life. The complaint alleged that Vonal and his wife had fraudulently persuaded Isabell to order the escrow agent to release the escrow and deliver all the documents to them with the intent to defraud the other children of James F. Allred of their share of his estate.

At the trial no witnesses were called, all parties submitting the issues to the court on the pleadings, answers to interrogatories and admissions. The court found that no undue influence or fraud had been practiced by Vonal or his wife to procure the delivery of the documents placed in escrow and that Isabell had acted of her own free will in ending the escrow and ordering the delivery to Vonal and his wife of the deeds and papers.

The court concluded as a matter of law that the sale by James F. Allred and Isabell Allred to Vonal and Agnes Allred of their interests in their real and personal

property operated as an equitable conversion of their interests in the contract to personalty, that is, it was converted to the right to receive the proceeds under the contract of sale. The court further concluded that by their written letter of instructions and delivery of the deeds and papers to their escrow agent they created in themselves as sellers a joint ownership of the property interests of the contract of sale and the right to receive the proceeds therefrom and upon the death of James F. Allred, the surviving joint owner, Isabell Allred became the sole owner of the right to receive the proceeds of the sale and the estate of James F. Allred had no interest therein. We agree.

As a general rule an enforceable executory contract of sale has the effect of converting the interest of the vendor of real property to personalty.[1] It is not contended that the vendors did not have an enforceable contract upon which they could have sued for specific performance in the event the vendees should have refused to perform their part of the agreement. Under the facts disclosed in this case there appears no good reason why the doctrine of "equitable conversion" should not be applied. Rather it appears that the application of that doctrine serves to carry out the apparent intent of the vendors. As shown above the sales agreement contemplated and provided for the delivery of deeds and documents to an escrow agent with written instructions of the conditions upon which delivery was to be made to the purchasers. The vendors complied with this provision in the contract by delivering the documents and their written letter of instructions to their escrow agent in which they declared that they irrevocably agreed that upon payment of the purchase price to them or to the survivor of them that delivery be made to Vonal and his wife of the deeds and other papers placed in escrow. They further instructed that should both of them die before the full purchase price was paid all payments thereafter to become due should be abated and the documents be delivered to Vonal and his wife as if full payment had been made.

In the absence of satisfactory proof to the contrary it is obvious from these provisions that James F. Allred and his wife, Isabell did not intend to leave their rights under the contract of sale to their estates. By combining all the properties sold both real and personal and whether owned jointly or severally by them, and by irrevocably agreeing that payments should

1. 19 Am.Jur., Equitable Conversion p. 11, Sec. 11; 1 Tiffany, Real Property, 3rd Ed., Sec. 310a; Calvin v. Custer County, 111 Mont. 162, 107 P.2d 134; Re Baker's Estate, 247 Iowa 1380, 78 N.W.2d 863, 64 A.L.R.2d 902.

be made to them or to the survivor, it is apparent that they intended by their acts to create a joint ownership in themselves to the proceeds of the sale. Such intent is shown by the use of the words "or to the survivor of them" in the instruction as to whom payments should be made. Such words are ordinarily used when it is intended that a joint tenancy should be created.[2] It is apparent from the entire transaction that it was the purpose and intent of James F. and Isabell Allred that as long as both or either of them was alive the benefits to be derived from the contract was to go to them or their survivor, but in the event of the death of both before disposition had been made of the entire proceeds, then the balance was not to become part of their estates but the balance due was to abate and be acquitted and delivery of the documents made to their son Vonal and his wife as if full payment had been made. Under such a state of the facts the court did not err in dismissing the action. Isabell Allred as the survivor became the sole owner and no interest vested in the estate of James F. Allred.

Affirmed. Costs to respondents.

HENROID, C. J., CALLISTER, McDONOUGH and CROCKETT, JJ., concur.

2. See Sec. 57–1–5, U.C.A.1953.